## THE SANDS POINT.

### GALLAGHER BROS. SAND & GRAVEL CORPORATION v. CITY OF NEW YORK.

No. A–16753.

District Court, E. D. New York.

Jan. 4, 1944.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for libelant.

Ignatius M. Wilkinson, Corp. Counsel, of New York City (Herbert B. Lee, of New York City, of counsel), for City of New York.

BYERS, District Judge.

The question for decision in this cause is whether the libelant has proved that a deck plank in its scow Sands Point was damaged as the result of being struck by a bucket during the course of the discharge of a cargo of sand on August 4, 1942.

It is undisputed that the scow arrived at the coal pier at Riker's Island, loaded with sand, from Stamford, Conn., and that she lay moored, port side to.

Unloading was started on the afternoon of August 3rd, and was completed before 3:30 p. m. of the next day, with the aid of a 2500 pound smooth jawed clam-shell bucket which was lowered from a horizontal arm, 35 feet long, having a fixed position on the pier; the rise and fall of the bucket was controlled by guide lines, as was the required swinging of the arm to accommodate the line of fall of the bucket, to the progress of discharge.

There was one operator of the apparatus, whose position was on the pier; prisoners from the jail on Riker's Island were on the deck of the scow to sweep the sand into heaps, when the load had been removed to a point where the bucket could no longer function without manual direction.

It appears that there were two broken planks in the deck of the scow according to a survey held on September 15, 1942, namely, one deck plank in Section A–10 and another in Sections B & C–9, and recovery is sought for damage to one of them, but it is impossible to say from the evidence, which plank is thought to have been struck by the said bucket on the second day of unloading, because no one called by the libelant saw the alleged happening.

The scowman had gone ashore, as he said, to purchase stores, at about eleven o'clock in the morning, and he did not return until the discharge had been completed. At that time the deck was "shovel clean", which means that all the sand had been removed which could be collected into piles through the use of shovels.

The scowman, Mitchell, testified that, because of this small quantity of sand still on deck, he did not discover the break in question upon his return from his shore errand, since there was a pocket of sand that covered it. That later he went below and used a flashlight and then found that one plank projected downwardly into the hold, as he said, about 5°, and that no one was about on the pier or adjacent thereto, to whom he could make a complaint.

He had already complained to the craneman, however, that the latter had damaged the bulkhead forming a portion of the cabin on deck, through permitting the bucket to strike it a heavy blow. The craneman denied this happening, and the scowman admitted that he had been mistaken in making this charge, and his testimony on the subject is as follows:

"Q. * * * while you were watching the unloading (August 3, 1942) did you complain to anybody about the way it was being done? A. Well the first day —the first day they hit the bulkhead.

"Q. That calls for a yes or no answer. A. Yes.

"Q. What is that? A. They hit the bulkhead.

"Q. Who did? A. The crane operator. I was inside the cabin and he hit the bulkhead. It was quite a bump and I got out of my cabin and I looked it over, and I tell the crane operator there was a break there, and do not hit it so hard. I said to him that he did that, but after that I investigated and it was not done by him * * *. I told him he did the crack and he denied it, *and I looked at the records* and I found out that it was somebody else, not him, because I have everything in the record." (Italics supplied.)

If this witness could not be relied upon as to an alleged occurrence while he was present, it must be obvious that his testimony about what occurred while he was absent can scarcely support a decree for libelant.

The scowman testified that, when he got to Stamford on the 5th, he reported the said deck damage, and repaired it under the supervision of the carpenter at that place, who was not called as a witness.

It is true that a letter was written to the City on August 7, 1942, which would be consistent with the scowman's report, and likewise with his early assertion concerning the bulkhead damage. The letter reads (Libelant's Exhibit 3):

"We wish to advise that while our Scow Sands Point was being unloaded at Rikers Island the bucket broke a deck plank and also caused damage to the stern bulkhead.

"At a later date when survey is arranged we will notify you of the time and place of same."

As has been stated, the survey was not held until six weeks later, on September 15, 1942, and discloses two items of deck plank damage, although seemingly but one is now sought to be made the basis of a decree.

The utmost that can be said for the libelant's case is that, if the craneman was indeed negligent in permitting the clam-shell bucket to fall heavily to the deck, this particular plank, whichever it is, could have been damaged; but that is not regarded as meeting the requirement to demonstrate by fair preponderance of evidence, the allegations of the libel.

One reason why the showing is thought to be deficient is that, since the bucket was a yard and a quarter broad, a break, such as the libelant asserts, would not have been confined to one plank, 10 inches wide, unless the bucket were dropped at an angle so that but one corner would strike the deck; that would have been an unusual method of lowering so heavy a piece of equipment; nothing in the testimony tends to indicate the employment of so bungling a technique.

The testimony is that there was a gang of twenty-five prisoners on the scow's deck, under the supervision of one of the guards, helping in the discharge, and there is a failure of proof to justify an inference that the craneman must be deemed to have been so ruthless in the manipulation of the bucket as to endanger the safety of any of them by dropping it on the deck with sufficient force to break a plank that was 4 inches thick and presumably in good condition.

For these reasons, the libel is dismissed, with costs.

Settle decree.